Kenneth P. FAUST, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9309–CR–1019.

Supreme Court of Indiana.

Nov. 29, 1994.

Belle T. Choate, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received an enhanced sentence of sixty (60) years.

The facts are: Appellant and the victim, Kathy Bond, lived together. He was unemployed while the victim held two jobs. On midnight of October 23, 1990, appellant returned home from an evening of drinking. Appellant awakened the sleeping victim and a heated argument ensued. When the victim began hitting appellant, he became angry, turned her on her stomach and sat on her. In his statement to police, reciting the facts above, appellant did not mention strangling the victim. However, the pathologist who performed the autopsy on the victim said the cause of death was manual strangulation.

Again, according to appellant's statement, when he discovered the victim was dead he wrapped her in a sheet, tied both ends, took her to the basement of the building, and placed her body in a storage room. In the morning, the janitor went to the basement and noticed the victim's body. In the meantime, the victim's employer had made inquiry concerning her absence from work. Police Officer Shinneman responded to the dispatch and arrived at the apartment about the same time the janitor found the victim's body.

Appellant was taken to the police station where he first told police that he had spent the evening in Panda's Tavern where he met a prostitute with whom he spent the night. However, when police informed him that Panda's Tavern had been destroyed six months previously, appellant broke down and stated, "I didn't mean to kill her." He then gave a videotaped statement to police in which he detailed his confrontation with the victim and the fact that he had taken her body to the basement.

Appellant claims his statement made to police should have been suppressed because it was not given voluntarily. He contends that at the time of his arrest he was too intoxicated to have the capacity to consent to giving the statement. In ruling on the motion, a motion to suppress the videotaped statement, the trial court considered the question of voluntariness and admitted the statement in evidence. This was the proper procedure. *Smith v. State* (1989), Ind., 543

N.E.2d 634. Considering the uncontroverted evidence together with the conflicting evidence that supports the trial court's decision, we find no error. *Id.*

■ Appellant also claims he was intimidated by Detective Larkins, who he claims "went into a rage" and acted like "a maniac" and while so acting threatened appellant with the electric chair, all of which frightened appellant into making his statement. This, of course, was denied by police officers during the trial. The videotaped statement gave the jury the opportunity to view appellant's demeanor which undoubtedly helped them draw the conclusion that the statement was in fact voluntary. Again, we will not reweigh the evidence. *Id.*

Appellant contends the trial court erred in the manner in which a juror was excused and the alternate substituted. During the showing of the videotaped statement of appellant, a member of the jury was observed sleeping. Following the viewing, the judge removed the jury from the courtroom then entered into a conference with both State and defense counsel concerning what should be done. It was decided by both the State and the defense counsel that it was not necessary to embarrass the juror by bringing her into the courtroom and confronting her with the fact she had slept. They agreed that the bailiff should inform her that she was excused and return the jury to the courtroom for the seating of the alternate, which was accomplished.

■ Appellant now claims it was improper to allow the bailiff to excuse the juror without bringing her into the courtroom. He alleges the manner in which the bailiff addressed the jury when the woman was excused might very well have prejudiced him. Appellant alleges such action violated the rule that he should be present during every stage of the proceeding. We observe in the first place both the State and appellant agreed to this procedure. Thus, the issue is waived. *Hensley v. State* (1969), 251 Ind. 633, 244 N.E.2d 225.

■ Further, we would observe that it is difficult to perceive how appellant could possibly have been harmed by the incident. The juror was not being removed for any reason of bias or prejudice that might have been conveyed to the other jurors but merely for her inattention during part of the trial. If we would assume for the sake of argument that all of the jurors heard the bailiff tell her why she was being excused, we see no possible harm from such information. We find no reversible error here.

Appellant claims he was denied effective assistance of trial counsel. Appellant claims his trial counsel should have moved for a mistrial following the testimony of Sergeant Phillips. However, he states nothing further in this regard. He states this matter should be remanded to the trial court for purposes of developing this issue and other issues regarding trial counsel's conduct. Appellant further states that trial counsel failed to "properly object/inquire" as to specific witnesses. However, here again he makes no other claims in this regard.

■ He claims trial counsel erred in failing to acquire an expert witness to establish intoxication. He also contends counsel erred in failing to submit an instruction on voluntary intoxication. Appellant concedes the standards set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 and *Burris v. State* (1990), Ind., 558 N.E.2d 1067.

■ In the case at bar, although appellant had claimed intoxication to the extent of being incapable of forming intent to kill the victim or to give a proper statement to police, there was an abundance of evidence as cited above that appellant in fact was sober enough to realize the gravity of the situation at the time of the victim's death and at the time he gave his statement. A defense attorney cannot be required to pursue a theory of defense that appears to him to be fruitless and which in fact might prove to be counterproductive as far as his presentation to the jury was concerned. The facts of this case

do not demonstrate that counsel violated the standards set forth in *Strickland.* This situation does not demonstrate ineffective assistance of counsel.

■ Appellant further claims his counsel was ineffective in that he did not pursue the trial court's denial of his motion to suppress appellant's confession. As above set out, when all evidence was presented, it had become apparent to counsel that the claim of intoxication and intimidation was not sufficient to exclude the confession. Standards of *Strickland* do not require a defense counsel to engage in a drumbeat fruitless defense. Such tactic in fact could be harmful to a defendant.

■ Appellant alleges there is insufficient evidence to sustain the charge of murder. He relies upon his statement that as he and the victim struggled he turned the victim on her stomach and sat on her chest for a short time, that he used no weapon, that his attack was not of a vicious or gruesome nature; therefore, counsel should have pursued the defense of reducing the charge to manslaughter rather than murder.

He claims there is a total lack of his intent to cause the death of the victim and that her death resulted as an accident during their struggle. In acknowledging the pathologist's statement that the cause of death was manual strangulation, appellant takes the position that this is unlikely because her hyoid bone was not fractured. However, the pathologist testified that there were "lots of injuries" inside the victim's neck, that there were hemorrhages in the layers of muscle around the victim's neck, larynx, and her hyoid bone. The mere fact that the bone was not fractured does not in any way gainsay the pathologist's observation that death resulted from strangulation.

■ Under the facts presented to the jury, they were entitled to find that appellant in fact had strangled the victim and the fact that he had omitted such information from his confession was an attempt to minimize his culpability. This Court will not reverse a verdict if there is substantial evidence of probative value to support the conclusions of the jury. *Beatty v. State* (1991), Ind., 567 N.E.2d 1134.

Again, appellant refers to his claim of intoxication; however, as stated above, the evidence before the jury clearly supports their decision that he was not so intoxicated as to be unable to form the intent to kill or to give a factual statement to the police officers.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.