**Kenneth P. FAUST, Petitioner,**

v.

**Ron ANDERSON, Respondent.**

No. 3:98–CV–0467 AS.

United States District Court, N.D. Indiana, South Bend Division.

May 5, 1999.

Kenneth P. Faust, Michigan City, IN, pro se.

James A Garrard, Indiana Attorney General, Indiana Government Center South, Indianapolis, IN, for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Petitioner Kenneth Faust is a prisoner of the State of Indiana, serving an enhanced sixty year sentence on a conviction of murder entered in the Marion Superior Court. The Indiana Supreme Court affirmed the petitioner's conviction in *Faust v. State*, 642 N.E.2d 1371 (Ind.1994). The Indiana Court of Appeals affirmed the denial of his petition for post-conviction relief in an unpublished opinion, and the Indiana Supreme Court denied transfer.

The undersigned Judge has spent numerous hours in a personal examination of the record and briefs in this case, and has most recently spent several hours going through all of the filings made by this petitioner on January 6, 1999. This court is keenly aware that there must be great indulgence of pro se litigants, particularly pro se prisoner litigants. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). *See also McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). This petitioner has engaged in some very heavy-handed verbal attacks on the Office of the Attorney General of Indiana and some named deputies in that office, and has also engaged in a rather widespread generalized attack on the judiciary of the State of Indiana at all levels. While some of this language would not be permitted by a practicing member of the legal profession, it is obvious that this petitioner is not so bound by legal ethics. As distasteful as some of these tactics may be, they are tolerated in the first instance and do not affect the analysis and decision of this case in the second instance. A careful examination of this record fails to disclose that this petitioner has presented a valid claim of actual or factual innocence.

On December 28, 1998, this court entered a memorandum and order denying the relief requested in Mr. Faust's petition. On January 6, 1999, Mr. Faust filed a traverse to the respondent's order to show cause, and moved to reconsider the denial of the relief requested in his petition because the judgment was entered before he had a chance to file his traverse. The court will vacate the entry of judgment in this case and will reconsider the disposition of the petition, taking into account the petitioner's traverse and other submissions that are properly before the court. With the reopening of this case, the court faces a veritable thicket of motions, filed by Mr. Faust, that must be dealt with before returning to the merits of Mr. Faust's petition.

## I.

The petitioner filed a series of motions seeking entry of default judgment or to have various submissions by the respondent stricken from the record. On September 28, 1999, Mr. Faust filed a motion for summary judgment. On October 13, 1998, the respondent filed what he labeled as a response to the motion for summary judgment, which actually amounted to a request that the motion for summary judgment be held in abeyance until he filed his response to the order to show cause. Mr. Faust moved to strike this request that his summary judgment motion be held in abeyance. On November 25, 1998, the respondent filed his response to the order to show cause, which effectively also served as a response to the petitioner's summary judgment motion. In his traverse, and in other submissions, Mr. Faust asserts that the respondent committed default by failing to file a proper and timely response to his summary judgment motion and by placing his response to the order to show cause in the mail on the day it was due with the court, resulting in the response being filed two days late.

■■■ Entry of a default judgment in a habeas case is extremely disfavored. *Bleitner v. Welborn,* 15 F.3d 652 (7th Cir. 1994). When a custodian delays the dispo-

sition of a petition for writ of habeas corpus, a district court, rather than entering default judgment, ordinarily should proceed to the merits of a petition. *Bleitner v. Welborn,* 15 F.3d at 653, *see also Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984) (even where a respondent's "disregard of the court's orders was inexcusable," a court should reach the merits of a petitioner's claim); *Allen v. Perini,* 26 Ohio Misc. 149, 424 F.2d 134, 138 (6th Cir.), *cert. denied,* 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970) (the mere failure of a custodian to return a warrant, or the fact that his return is imperfect, should not operate to discharge the prisoner because "such a rule would place in the hands of negligent or corrupt jailors the power to empty a penitentiary").

When it granted the respondent's motion for enlargement of time, the court ordered that the respondent's response to the order to show cause was to be filed by November 23, 1998. The respondent's counsel placed this document in the mail on the date it was due, and it was actually filed two days late. The respondent also filed his motion for enlargement of time within which to respond to the court's order to show cause after the date the response to the order to show cause was to be filed (counsel for the respondent again having mailed the motion for enlargement on the day the response was actually due to be filed). These lapses, however, pale in comparison to the behavior of the respondents in cases such as *Bleitner v. Welborn* and *Bermudez v. Reid,* where the courts found default judgment to be an inappropriate remedy. Moreover, the respondent's overall behavior in this case has been diligent and has not delayed the disposition of this petition. Accordingly, the court will deny each of the petitioner's requests for a default judgment.

On October 19, 1998, Mr. Faust filed what he styled as a motion for judgment on the pleadings. A federal habeas corpus proceeding is initiated by a petition, which functionally serves the purpose of a com-

plaint in other civil actions. This court accepted Mr. Faust's petition, and ordered the respondent to show cause why the court should not assume jurisdiction over the case and grant the requested relief. The respondent then filed a response to order to show cause, which functionally served as a combination responsive pleading and motion to dismiss.

A motion for judgment on the pleadings may be filed by a party, "after the pleadings are closed." Fed.R.Civ.P. 12(c). Treating Mr. Faust's petition as a complaint, the pleadings in this case did not close until the respondent filed his responsive pleading. To the extent that a motion for judgment on the pleadings is ever applicable in a § 2254 case, Mr. Faust's motion was premature because he filed it before the respondent filed his response to the order to show cause. Moreover, in the body of his motion, Mr. Faust bottoms his request on the respondent's failure to file a timely response to order—thus making It in actuality yet another motion for default judgment, which the court will deny for the reasons already set forth in this memorandum.

On December 16, 1998, Mr. Faust filed a "substantive objection" to the respondent's return to the order to show cause, in which he requests that "the State's answer should be forthwith strickened [sic] from the record and otherwise disallowed." In this submission, Mr. Faust again suggests that because the respondent did not specifically respond to the petitioner's summary judgment motion, he has "effectively admit[ted] each and all of the material facts going to support our claim of error." The court denied this motion in its memorandum and order of December 28, 1998, and reaffirms the denial of the motion in this memorandum. The response to the order to show cause was effectively also a response to the summary judgment motion, and the petitioner does not state sufficient grounds to strike the return to order to show cause.

A few days later, on December 21, 1998, Mr. Faust filed yet another motion to strike, this time seeking to strike selected portions of the return to the order to show cause. Mr. Faust essentially asserts that the respondent has misstated and misconstrued certain of Mr. Faust's arguments and, consequentially, has proffered "sham" arguments in response. The court will deny the motion to strike, and allow both petitioner and respondent to present their arguments.

In a final squabble between the petitioner and respondent's counsel over the timely filing of documents with the court, the petitioner moves to strike the respondent's response to several of his motions as untimely. On January 12, 1999, the court entered an order affording the Indiana Attorney General "until February 1, 1999, to file written responses to" a series of motions filed by the petitioner on January 6, 1999. As has been his custom in this case, counsel for the respondent placed his responses in the mail on February 1, 1999, the date they were to be filed with the court, and they were not actually filed with the court until February 4, 1999.

In his motion to strike, to which the respondent has not replied, Mr. Faust states that "(f)or the Dep. Attorney General's benefit, the distinction between 'file' and 'service' is: the '3–day service by mail extension does **not** apply.'" (Emphasis in original). This language mirrors earlier admonishments given to the respondent's counsel by Mr. Faust regarding timely filing of materials with the court.

■ Mr. Faust's point concerning the unavailability of the benefit of Fed. R.Civ.P. 6(e) to the respondent in responding to the orders entered by the court in this case is well taken because, in each of the relevant orders, this court established a specific date by which a response was to be filed. If a court does not set forth a "prescribed period" for computation under Rule 6, but rather orders a motion or other document to be filed "by a date certain," Fed.R.Civ.P. 6(e) does not apply. *Clark v. Milam,* 152 F.R.D. 66, 69 (S.D.W.Va.1993). "Where a filing deadline

is specified by the court, papers to be filed must reach the clerk's office by the deadline date. When a party mails papers to the clerk's office, filing is complete when the papers are received by the clerk or placed in the clerk's post office box. Papers arriving after a deadline are untimely even if mailed before the deadline." *Clark v. Milam,* 152 F.R.D. at 69 (citations omitted). *See also Torras Herreria y Construcciones, S.A. v. M/V Timur Star,* 803 F.2d 215, 216 (6th Cir.1986).

This court has already denied the petitioner's various requests for a default judgment based on the respondent's failure to file a response to the order to show cause by the date certain imposed by this court. The law does not favor such an outcome, and even if the court had more discretion in the matter, it would not be inclined to grant a default judgment in such circumstances. The factors militating against a default judgment in a habeas case, however, do not apply to the submissions dealt with in this motion, and the counsel for the respondent has shown a pattern of filing documents late. Accordingly, the court will grant the petitioner's motion to strike the respondent's replies to the court's order of January 12, 1999, to the extent that it will order the respondent's response to the petitioner's motion to reargue the judgment, his reply to the motion to alter or amend judgment, and his reply to the petitioner's request that Rule 11 sanctions be imposed on counsel for the respondent to be stricken from the record.

## II.

The petitioner filed a series of motions related to the massive state court record, which the respondent submitted to the court pursuant to court order. On December 16, 1998, Mr. Faust filed a motion to take judicial notice, which the court granted in a limited fashion in its now vacated memorandum and order denying the relief requested in Mr. Faust's petition and dismissing this case. The court will again grant Mr. Faust's motion to take judicial notice, to the extent that it will treat his motion as a memorandum calling the court's attention to the " 'Defense Objection to Court Ruling' filed November 12, 1992, that is a matter of facial record," and will review the portion of the state court record cited in the memorandum.

On December 28, 1998, Mr. Faust filed a motion to take judicial notice of an affidavit attached to the petitioner's appellate brief in the Indiana Court of Appeals (exhibit G attached to the respondent's return to order to show cause). The court again construes this motion as calling the court's attention to a specific part of the state court record, and will grant the motion to the extent that it will review the portion of the state court record cited in the memorandum.

█ Also on December 28, 1998, Mr. Faust filed a motion to expand the record to add the deposition of Indianapolis Police Officer George Leon Benjamin. This deposition was apparently one of several taken by the defense before the hearings on Mr. Faust's motions to suppress his confession. The court must deny the petitioner's request to expand the record because it cannot consider evidence in a habeas proceeding that was not before the state courts. *See Wilson v. Moore,* 999 F.Supp. 783, 791 (D.S.C.1998) (habeas petitioner precluded from presenting additional evidence in a federal habeas corpus proceeding, not presented to the state courts, on the grounds that the evidence could have been previously discovered though the exercise of due diligence). The record reflects that Officer Benjamin testified in person at the suppression hearing and that testimony, rather than his deposition, is the evidence that is properly before this court.

On January 6, 1999, Mr. Faust filed another motion to expand the record, this time seeking to include his verified petition for transfer filed with the Indiana Supreme Court on the court of appeals decision affirming the denial of the relief requested in his post-conviction relief petition, his memorandum of law in support

of the verified motion for transfer, and the notification that the Indiana Supreme Court had denied transfer. The respondent filed a reply, which is the only document filed by the respondent on February 4, 1999, that the court did not order stricken from the record. In this document, the respondent asserts that he informed the court under Rule 5 of the Rules governing § 2254 cases, that the petitioner had exhausted his available state court records and argues that the records Mr. Faust seeks to add to the record are superfluous, unnecessary, and not relevant to the determination of the petition's merits.

When this court ordered the respondent to show cause why it should not assume jurisdiction over this case and grant the requested relief, the court ordered "that the respondent shall submit to this court the petitioner's full and complete state court record." The respondent may be correct that these particular records are not necessary to the adjudication of the merits of Mr. Faust's petition, but the court wishes to have the entire state court record before it, and to that end ordered the respondent to file the "full and complete" record. The respondent does not contest the validity of the proffered documents, or contend that they are not part of the state court record. Rather, he argues that he omitted these documents as unnecessary, but without requesting leave of the court to be excused from submitting them. Accordingly, the court will grant the petitioner's motion to expand the record to include these three documents.

### III.

On January 6, 1999, Mr. Faust filed a motion for order to show cause why sanctions should not be imposed on the respondent's counsel for allegedly making "blatant misrepresentations" of the state court record and for "his irresponsible and untoward conduct during the course of these legal proceedings."[1] The respondent's counsel submitted a response to this motion, but it has been stricken from the record as untimely. Mr. Faust also filed a motion for sanctions under the rules governing § 2254 cases.

■ In habeas corpus cases, it is the duty of the counsel for the respondent to zealously defend the petitioner's conviction and to advance any colorable claim in support of upholding that conviction. In many cases, including the instant case, the attorney dealing with the habeas petition comes to the case as a stranger to an already extensive state court record. Mr. Faust alleges that respondent's counsel has failed in his review of the state court record and has misstated portions of the record. The court, however, sees nothing in this record that would justify imposing sanctions on the respondent's counsel.

### IV.

Mr. Faust also filed a motion for evidentiary hearing, two motions for oral argument, and a motion for a three-judge panel to hear oral argument. In support of his motion for evidentiary hearing, the petitioner argues that Officer David Phillips, one of the police officers who was involved in his arrest and interrogation, is "patently incredible on the face of the record." In support of this claim, he cites *Zilich v. Reid*, 36 F.3d 317, 323 (3d Cir.1994), in which the court of appeals held that an evidentiary hearing on the voluntariness of

---

1. In several of his submissions to the court, Mr. Faust heaps calumny on the respondent's counsel, accusing him of lying, referring to him in conjunction with epithets, and generally describing him in derogatory and pejorative terms. He even went so far on one occasion as to liken respondent's counsel's legal ethics to those of President Clinton.

Mr. Faust has specifically apologized to the court for his "assertive nature," which the court believes extends to the statements listed above as well as to his statements about other Indiana lawyers and Indiana courts—many of which go well beyond what is acceptable, and could justify Rule 11 sanctions. But, as the court has already stated, it is willing to treat *pro se* prisoner litigants with more leniency, in this regard, that it would be inclined to extend to an attorney.

a guilty plea was necessary in the district court because the merits of the petitioner's "claim were not resolved in the state court, and because they require credibility determinations that cannot be resolved by a review of the cold record."

 An evidentiary hearing in a federal habeas corpus proceeding is mandatory only when there is a factual dispute which, if resolved in the petitioner's favor, would entitle him to relief, and he did not receive a full and fair evidentiary hearing in state court. *Amos v. Scott*, 61 F.3d 333 (5th Cir.), *cert. denied*, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995). A state court finding that a petitioner's claims were unfounded is afforded a presumption of correctness, such that petitioner was not entitled to a hearing in a federal habeas corpus proceeding where he received a full and fair hearing in state court. *Baldree v. Johnson*, 99 F.3d 659 (5th Cir.1996), *cert. denied*, 520 U.S. 1194, 117 S.Ct. 1489, 137 L.Ed.2d 699 (1997).

In this case, unlike *Zilich v. Reid*, there do not appear to be any factual issues that were not resolved by the state court. The record reflects that this petitioner received a full and fair hearing, at which Officer Phillips testified, and the state trial court implicitly determined any questions of credibility against Mr. Faust when it denied his motions to suppress. *See LaVallee v. Delle Rose*, 410 U.S. 690, 694, 93 S.Ct. 1203, 1206, 35 L.Ed.2d 637 (1973) (Normally a state prisoner seeking federal habeas relief in federal court must overcome a presumption that an adverse ruling in state court was based on an adverse credibility determination by the state hearing judge). *See also Marshall v. Lonberger*, 459 U.S. 422, 434–35, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983) (where a state court failed to make express findings as to the defendants' credibility, failure to grant relief was tantamount to an express finding against the credibility of the defendant). For these reasons, the court will

deny the petitioner's request for an evidentiary hearing.

Mr. Faust also seeks an oral argument in front of a three-judge panel, asserting that his case is extraordinary and that he needs an oral argument to adequately present and develop his arguments. This court seldom conducts oral arguments in habeas cases, and the questions arising in this case do not justify an oral argument. Moreover, given the number, length, and quality[2] of the documents filed by the petitioner in this case, the court concludes that he is fully capable of presenting all of his arguments in writing and that a hearing is not necessary.

## V.

 In his motion to take judicial notice of the affidavit he attached to his post-conviction relief appellant's brief, Mr. Faust refers to the affidavit "as a colorable claim of innocence." In criminal cases, "the trial is the paramount event for determining the defendant's guilt or innocence, and Federal habeas courts do not sit to correct errors of fact in state trials, but to ensure that individuals are not imprisoned in violation of the Constitution." *Herrera v. Collins*, 506 U.S. 390, 390, 113 S.Ct. 853, 855, 122 L.Ed.2d 203 (1993). Accordingly, claims of actual innocence do not "state a ground for federal habeas relief absent an independent Constitutional violation occurring in the course of the underlying state criminal proceedings." *Id.* 506 U.S. at 390–91, 113 S.Ct. at 855.

 But "(t)his is not to say that our habeas corpus jurisprudence casts a blind eye towards innocence." *Id.* 506 U.S. at 404, 113 S.Ct. at 855. "A claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass" to have an otherwise barred constitutional claim considered on the merits. *Id.* 506 U.S. at 404, 113 S.Ct. at 862. In order to

---

2. Aside from his propensity to conduct vituperative attacks on opposing counsel and the Indiana court system, Mr. Faust's submissions are extremely lawyer-like, and show an ability for legal research and writing that is unusual in a *pro se* litigant.

establish a claim of a miscarriage of justice or actual innocence "(t)he prisoner must 'show a fair probability that in light of all the evidence [including that which was illegally obtained as well as that which was legally excluded] ... the trier of facts would have entertained a reasonable doubt of his guilt.'" *Zavesky v. Miller*, 79 F.3d 554, 556 (7th Cir.), *cert.* denied, 519 U.S. 828, 117 S.Ct. 93, 136 L.Ed.2d 48 (1996), *quoting Kuhlmann v. Wilson*, 477 U.S. 436 n. 17, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).

Mr. Faust apparently seeks to present a miscarriage of justice or actual innocence claim to this court. As requested by the petitioner, the court has carefully reviewed the affidavit attached to his appellate brief in the Indiana Court of Appeals, in which he asserts that claim. In ¶ 20 of that affidavit, Mr. Faust asks "(a)re we [3] saying we are innocent, here?" He then responds to his own question by stating, "(w)e don't know." [4] If this is not the most tepid declaration of actual innocence in the history of Anglo–American jurisprudence, it is certainly the most tenuous declaration of innocence ever made to this court.

Mr. Faust explains his hesitancy to disclaim any responsibility for the victim's death in ¶ 17 of his affidavit, where he states that "(w)e literally possess, to date, no knowledge of the events between the evening of October 22nd and the morning of October 24th of 1990 [arrest] w/exception to [sic] an insignificant fight which certainly did not produce death, e.g., the victim ask [sic] us to make a drink afterward: appellant was, unflatteringly, in an alcohol blackout during the intervening period. Even now, after hypnosis therapy behind us, there remain no revealing facts in our memory to support our former statement. The therapist merely said, 'we may never know.'" In ¶ 29, Mr. Faust summarizes, "'bottom line?' We don't believe we are capable of killing a woman."

This court concludes that the petitioner's statements in this affidavit do not constitute a substantial claim of actual innocence. Moreover, after reviewing the full state court record, the court concludes that even if his submissions could be read as attempting to advancing a claim of actual innocence, he does not come close to actually stating such a claim in light of the high standard set forth in *Kuhlmann v. Wilson* and the other cases that have dealt with claims of actual innocence.

## VI.

■ Having resolved the outstanding motions and requests in this case, the court turns to the merits of Mr. Faust's petition. In considering this action for federal collateral relief, this court must presume as correct the facts as set forth by the state courts. 28 U.S.C. § 2254(e)(1), *Sumner. v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *see also Lindh v. Murphy*, 96 F.3d 856, 867 (7th Cir.1996) (en banc), *reversed on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Moreover, pursuant to the 1996 amendments to 28 U.S.C. § 2254, the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In Mr. Faust's direct appeal, the Indiana Supreme Court summarized the facts as follows:

Appellant and the victim, Kathy Bond, lived together. He was unemployed while the victim held two jobs. On midnight of October 23, 1990, appellant returned home from an evening of drinking. Appellant awakened the sleeping victim and a heated argument ensued. When the victim began hitting appellant, he became angry, turned her on her stomach and sat on her. In his state-

---

**3.** Throughout this affidavit, Mr. Faust refers to himself as "we" or "us."

**4.** Later, in ¶¶ 26 and 27 of his affidavit, Mr. Faust restates his question as "(d)o we think we are guilty of murder?" and responds "no." He then asks, "(d)o we think, for instance we are responsible for the death of, Kathleen Bond, our former girlfriend?"—to which he responds, "possibly."

ment to police, reciting the facts above, appellant did not mention strangling the victim. However, the pathologist who performed the autopsy on the victim said the cause of death was manual strangulation.

Again, according to the appellant's statement, when he discovered the victim was dead he wrapped her in a sheet, tied both ends, took her to the basement of the building, and placed her body in a storage room. In the morning, the janitor went to the basement and noticed the victim's body. In the meantime, the victim's employer had made inquiry concerning her absence from work. Police Officer Shinneman responded to the dispatch and arrived at the apartment about the same time the janitor found the victim's body.

Appellant was taken to the police station where he first told police that he had spent the evening in Panda's Tavern where he met a prostitute with whom he spent the night. However, when police informed him that Panda's Tavern had been destroyed six months previously, appellant broke down and stated, "I didn't mean to kill her." He then gave a videotaped statement to police in which he detailed his confrontation with the victim and the fact that he had taken her body to the basement.

*Faust v. State*, 642 N.E.2d at 1372.

In his direct appeal, Mr. Faust argued that his statement to the police should have been suppressed because he was too intoxicated to have the capacity to consent to giving the statement and because he was intimidated by Detective Larkins; that a juror was not properly excused from the trial; that he was denied effective assistance of trial counsel; and that there was insufficient evidence to sustain the charge of murder. The Indiana Supreme Court rejected each of these claims.

Mr. Faust subsequently filed a petition for post-conviction relief, which the trial court denied. In his appeal of the denial of his petition for post-conviction relief, Mr. Faust presented four claims: whether

the trial court abused its discretion by denying the petition for post-conviction relief based on the record, whether his statement was inadmissible at trial and "whether a violation of procedural due process will rise to the level of a substantive rights" under the Fourteenth Amendment; whether his statement was the fruit of an illegal arrest under the Fourth Amendment; and whether his direct appeal counsel was ineffective. The court of appeals consolidated Mr. Faust's arguments into two claims and rejected them.

In his habeas corpus petition, Mr. Faust asserts (1) that his direct appeal counsel was ineffective, (2) that "his conviction was obtained by use of a confession that was a fruit of product of [sic] an illegal arrest" violating the Fourth Amendment, (3) that the admission of his statement to the police at trial violated the Fourteenth Amendment's due process clause, and (4) that the state courts violated the Fourteenth Amendment's due process clause—a claim "related to" the third claim, "and predicated upon the very same factual tableau."

### A.

 In ground one of his petition for writ of habeas corpus, Mr. Faust asserts that his direct appeal counsel was ineffective. In order to succeed on an ineffective assistance of counsel claim, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that this deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Long v. Krenke,* 138 F.3d 1160 (7th Cir.1998). "[A]ppellate counsel is ineffective if counsel fails to raise issues that are (1) obvious, and (2) clearly stronger than the one raised. When a state court applies established law, its decision must be respected unless 'unreasonable.'" *Williams v. Parke,* 133 F.3d 971, 974 (7th Cir.1997) (citations omitted).

In his sixty-one page brief and memorandum of law in support of his habeas

corpus petition, Mr. Faust asserts that his appellate counsel was ineffective because she refused to include "a clearly articulated claim within his state motion to correct errors," and did not include the claims presented in grounds III and IV of his habeas corpus petition. When he appealed the denial of his petition for post-conviction relief, Mr. Faust contended that his direct appeal counsel argued that his statement to the police was inadmissible on Fifth Amendment grounds. According to Mr. Faust's post-conviction appellate brief, this argument "was without factual support whatsoever on the face of the record." Mr. Faust states that his appellate counsel refused to appeal the denial of the motion to suppress on Fourth Amendment grounds even though, according to his post-conviction appellate brief, this claim had "literally, volumes of factual support to advance a credible argument upon."

In the portion of its opinion dealing with his ineffectiveness of appellate counsel claim, the Indiana Court of Appeals recited the standard set forth in *Strickland v. Washington*, establishing that it was applying the same standard as the federal courts use in habeas corpus review of ineffectiveness of counsel claims. The court of appeals then reviewed the facts of the case, concluded that "the decision of which issues to raise is one of the most important strategic decisions to be made by appellate counsel," and stated that it was "unconvinced that Faust's appellate counsel's decision not to renew the Fourth Amendment challenge was unquestionably unreasonable in view of the circumstances of Faust's arrest and statement." *Faust v. State of Indiana*, No. 49A02–9607–PC–422, memorandum decision at p. 10 (Ind. Ct. of Appeals). This memorandum decision was attached to the respondent's return to the order to show cause as exhibit J.

After reviewing the state court record, it does not appear to this court that the issues that Mr. Faust's direct appeal counsel failed to raise on appeal are obviously meritorious, or clearly stronger than the issues that were raised, or that the failure to raise those issues prejudiced him. Like the Indiana Court of Appeals, this court declines to hold that Mr. Faust's appellate counsel was ineffective when she decided not to include his Fourth Amendment claim in his appellate brief. This court also concludes that the failure of Mr. Faust's appellate counsel to argue the claims presented in grounds III and IV of his present petition did not constitute ineffectiveness of counsel.

### B.

In ground two of his habeas petition, Mr. Faust asserts that his warrantless arrest, and the manner in which police officers obtained his confession, which was admitted at trial over his objection, constituted a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. The respondent argues that the petitioner "had an opportunity to litigate his fourth Amendment claims in the state courts," a contention that Mr. Faust vehemently disputes at great length. In the alternative, the respondent argues that even if the court reaches the merits of Mr. Faust's Fourth Amendment claim, the applicable law supports the admissibility of Mr. Faust's statement.

Mr. Faust raised his Fourth Amendment claim in his petition for post-conviction relief. The trial court found that "(b)ecause the question of the propriety of the petitioner's arrest was available for challenge at trial and on appeal, that question cannot be presented for the first time at this juncture." On appeal, the Attorney General's office argued that the Indiana Supreme Court had resolved this question against Mr. Faust in his direct appeal. The Indiana Court of Appeals disagreed, stating that "our supreme court was not presented with a Fourth Amendment challenge in Faust's case. Instead, Faust had contended that the statement he made to police should have been suppressed because it was not given voluntarily." Court of Appeals memorandum decision at p. 9.

The court of appeals went on to state that "we are unconvinced that Faust's appellate counsel's decision not to renew the Fourth Amendment challenge was unquestionably unreasonable in view of the circumstances of Faust's arrest and statement." Court of Appeals memorandum decision at p. 10 (footnote omitted).

The respondent contends that the petitioner's Fourth Amendment claim is barred by the doctrine of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In *Stone v. Powell,* "the Supreme Court established a general rule that criminal defendants may not seek collateral review of Fourth Amendment exclusionary rule claims under § 2254 if they received 'an opportunity for full and fair litigation of' their Fourth Amendment claims in State court." *Turentine v. Miller,* 80 F.3d 222, 224 (7th Cir.), *cert. denied,* 519 U.S. 968, 117 S.Ct. 394, 136 L.Ed.2d 309 (1996), *quoting Stone v. Powell,* 428 U.S. at 494, 96 S.Ct. at 3052. The Supreme Court based its decision in *Stone v. Powell* "on a concern for judicial economy, stating that the 'justification [for the exclusionary rule] becomes minimal where ... a prisoner ... previously has been afforded the opportunity for full and fair consideration of his search-and-seizure claim at trial and on direct review.' " *Turentine v. Miller,* 80 F.3d at 224, *quoting Stone v. Powell,* 428 U.S. at 486, 96 S.Ct. at 3048.

In *Weber v. Murphy,* 15 F.3d 691 (7th Cir.), *cert. denied,* 511 U.S. 1097, 114 S.Ct. 1865, 128 L.Ed.2d 486 (1994), the Seventh Circuit established a test for determining when a § 2254 petitioner has received a full and fair opportunity to litigate a Fourth Amendment claim in state court. "First the petitioner 'must clearly inform [ ] the state court of the factual basis ... for ... [his] claim and ... argue[ ] that those facts constitute a violation of ... [his] fourth amendment rights. If he has clearly presented the issue, we then con-

sider whether the state court has carefully and thoroughly analyzed the facts and ... applied the proper constitutional case law to the facts.' " *Turentine v. Miller,* 80 F.3d at 224, *quoting Weber v. Murphy,* 15 F.3d at 694.

The state court record establishes that Mr. Faust clearly informed the state trial court of the factual basis for his Fourth Amendment claim. Both Mr. Faust and his counsel filed motions to suppress, and supporting legal memoranda,[5] challenging the voluntariness of his confession and the probable cause for his arrest. A commissioner, on behalf of the trial court, conducted hearings on both suppression motions. At these lengthy hearings, the court received the testimony of Mr. Faust and the police officers involved in his arrest and interrogation, and Mr. Faust's counsel presented oral arguments on the facts and the law. If Mr. Faust did not present any claims or arguments he might have had concerning his arrest and interrogation, it was not because the trial court did not allow him the opportunity to do so.

Mr. Faust concedes that prior to trial, the commissioner overruled the motions to suppress his statement. The record also reflects that when Mr. Faust renewed the motions to suppress at trial, the trial judge overruled them. The trial court subsequently entered brief findings of fact and conclusions of law reciting these facts.

Mr. Faust argues that the trial court never made findings of fact and conclusions of law that are adequate for the purposes of habeas corpus review. But that a petitioner received an opportunity for a fair hearing forecloses a federal court from further inquiry into the trial court's subsequent action, including whether or not the trial court has made express findings of fact. *Caldwell v. Cupp,* 781 F.2d 714, 715 (9th Cir.1986) (citations omitted). *See also Willett v. Lockhart,* 37 F.3d 1265, 1269 (8th Cir.1994), *cert. denied,* 514 U.S.

---

**5.** The trial court allowed Mr. Faust to proceed as a sort of "co-counsel" during much of the pre-trial period.

1052, 115 S.Ct. 1432, 131 L.Ed.2d 313 (1995) (*Stone v. Powell,* requires only that the petitioner have been afforded an opportunity for full and fair litigation in the state court, "not that this opportunity must produce either factual findings or legal conclusions that would survive ordinary federal habeas review"). The trial court certainly could have been more explicit in its findings of fact and conclusions of law. But given the presumption that an adverse ruling in state court was based on an adverse credibility determination by the state hearing judge, *LaVallee v. Delle Rose,* 410 U.S. at 695, 93 S.Ct. at 1206, the findings and conclusions are sufficient for purposes of habeas corpus review. Accordingly, this court must deny the petitioner's Fourth Amendment claim based on the doctrine of *Stone v. Powell.*

### C.

In ground three of his habeas petition, Mr. Faust asserts that the admission of his statement to the police at trial violated the Fourteenth Amendment's due process clause; in ground four, he also asserts that the state courts violated the Fourteenth Amendment's due process clause— a claim he states is "related to" the third claim, "and predicated upon the very same factual tableau." Because these claims are related and based on the same "factual tableau," the court will consider them together.

The claims in grounds three and four of the petition revolve around the procedure used by the trial court in dealing with his motions to suppress his inculpatory statement to the police. Mr. Faust essentially argues that the admission of his statement into evidence at trial was improper because the master commissioner's rulings on his pre-trial motions to suppress were

not formally adopted or approved by the judge before trial. He appears to be arguing that under state law, his trial should not have even commenced until after the judge acted on the master commissioner's rulings on his motions to suppress. According to Mr. Faust, the attorneys who opposed him in state court and the state courts that dealt with his post-conviction relief petition misunderstood, misstated, or simply refused to acknowledge or rule on his arguments.[6]

The petitioner addressed these two grounds at length [7] in his brief and memorandum of law in support of petition for writ of habeas corpus. On page 39 of this memorandum, Mr. Faust states that "in simple terms," he "objected to a ruling entered [by the commissioner] without being adopted by a regular judge." On page 43 of his brief and memorandum, the petitioner argues that "there was no final appealable judgment" where the master commissioner presided over the proceedings but did not formally report his recommendations to the regular judge for approval and entry of a final order.

The state court genesis of this claim is in the petitioner's amended petition for post-conviction relief, in which he presented arguments similar to those he presents in this portion of his habeas petition. Mr. Faust presented these claims to the Indiana Court of Appeals, which "consolidated and rephrase[d]" them, Court of Appeals memorandum decision at p. 2, and then evidently treated these particular claims solely as a "challenge to the jurisdiction of the special judge." Court of Appeals memorandum decision at p. 8. The court of appeals stated that Mr. Faust "did not object to the special judge at trial.

---

6. Mr. Faust also contends that respondent's counsel misunderstands and misstates the issues presented in this portion of his habeas petition. But it appears to the court that the respondent's response to order fairly restates and responds to these claims. The respondent summarizes the question presented in this portion of the petition as a claim that "the master commissioner's ruling on Faust's

motion to suppress evidence, which was not adopted by the regular judge before trial, violated Indiana statutory and constitutional law and consequently his right to due process."

7. The petitioner's arguments on these two grounds cover twenty typed pages in his memorandum, in which he delves deeply into state law and procedure.

Rather the record indicates that the special judge was appointed by agreement of the parties." The court of appeals further noted that Mr. Faust's "direct appeal counsel did not raise the issue," of appointment of the special judge. Court of Appeals memorandum decision at p. 8.

Mr. Faust advises this court that he did not raise the question of the jurisdiction of the special judge either in his direct appeal or in his post-conviction appeal. He states that the Indiana Court of Appeals simply misconstrued his argument. After reviewing the brief the petitioner's filed in the court of appeals, this court agrees with Mr. Faust.

The claim the petitioner presented in his post-conviction appeal was a convoluted argument dealing with the interaction of the trial court and the master commissioner. Mr. Faust's argument did not challenge the jurisdiction of the special judge in this argument, though he did mention the special judge in the body of the argument. The claim that the petitioner presented to the state courts, and presents to this court, is that the state trial court's failure to properly adopt the master commissioner's rulings on his motions to suppress violated Indiana law and constituted a fundamental error, which implicated the Fourteenth Amendment's due process clause and deprived him of a fair trial.

The respondent first argues that this is a state law claim and is therefore not cognizable in federal habeas corpus proceedings. In the alternative, he argues that Mr. Faust procedurally defaulted this claim because he did not raise it on direct appeal and because in his post-conviction proceedings, he did not alert the state courts to the fact that he was asserting a federal Constitutional claim. In a second alternative argument, the respondent argues, citing several Indiana cases, that in any event, the petitioner's claim has no merit under Indiana law because a ruling on a pre-trial motion to suppress is not a final judgment for which an appeal would lie.

The respondent concedes that Mr. Faust has exhausted his state court remedies. But before the court may reach the merits of the petitioner's claims raised in grounds two and three of the petition, it must determine whether he has avoided procedural default; if that question is resolved in the negative, this claim is barred, and the court may not consider the merits. *Lostutter v. Peters*, 50 F.3d 392, 394 (7th Cir.), *cert. denied*, 516 U.S. 843, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.), *cert. denied*, 502 U.S. 944, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991). Once a claim is procedurally defaulted, a federal court will not address the merits of that claim unless the petitioner can show both cause for the default and prejudice resulting from the failure to obtain review on the merits. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The respondent argues that the claims presented in this portion of Mr. Faust's habeas petition were not fully and fairly presented to the state courts as a constitutional violation, and therefore he has not met the requirement that the state court "be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Riggins v. McGinnis*, 50 F.3d 492, 493 (7th Cir.1995), *cert. denied*, 515 U.S. 1163, 115 S.Ct. 2621, 132 L.Ed.2d 862 (1995). Review of Mr. Faust's post-conviction appellate brief, however, establishes that he cited the Fourteenth Amendment in support of his claim that the trial court's failure to adopt the master commissioner's ruling prior to trial constituted a fundamental error and deprived him of a fair trial. In his opening paragraph, Mr. Faust specifically states that "this fundamental error is bottomed on the analysis" of federal "constitutional harm" by the "elementary absence of a valid judgment on admissibility of evidence."

The petitioner also argues that to the extent Mr. Faust raises the question of the procedure by which the trial court dealt

with the admissibility of his statement as an independent claim, it is barred from habeas review because it was available but not raised on direct appeal. In his post-conviction proceedings, Mr. Faust asserted that the alleged error constituted fundamental error, which his appellate counsel failed to preserve. According to the respondent, the court of appeals addressed the claims Mr. Faust raised for the first time in his post-conviction petition in the context of ineffective assistance of counsel. The respondent argues that the state court's adjudication of the issue in the context of ineffective assistance of counsel is insufficient to preserve the claim for federal collateral review.

The federal courts at all levels have a duty "to determine the scope of the relevant state court judgment." *Coleman v. Thompson,* 501 U.S. at 739, 111 S.Ct. at 2559. Review of the decision of the state court of appeals does not support the proposition that the Indiana appellate court dealt with the claims presented to this court in grounds three and four of the petition in the context of ineffective assistance of counsel. Rather, it does not appear that the court of appeals addressed these particular claims at all.

In its summary of the petitioner's ineffectiveness of counsel claim, the Indiana Court of Appeals states that "Faust argues that his direct appeal counsel was ineffective in two respects. First he argues that his counsel was ineffective in not challenging the jurisdiction of the special judge. Second, he argues that counsel was ineffective for not contending that his voluntary statement to the police was the 'fruit' of an illegal search and arrest. He faults his counsel for 'waiving' these issues." Court of Appeals memorandum decision at p. 6. The court of appeals addressed the question of the jurisdiction of the special judge, which is not a claim that Mr. Faust actually raised in his brief, in the context of his ineffectiveness of counsel claim. But the court of appeals did not address the convoluted claim concerning fundamental error and the Fourteenth Amend-

ment's due process clause that Mr. Faust actually presented to the court.

 Where a state appellate court fails to address a federal claim, or misconstrues it, the exhaustion doctrine is satisfied. *Meeks v. Bergen,* 749 F.2d 322, 325 n. 1 (6th Cir.1984). But the federal courts must still inquire whether the petitioner's failure "to comply with state rules of procedure governing the timely presentation of federal constitutional claims forfeited the right to federal habeas corpus review of those claims absent a showing of 'cause for noncompliance [with state procedure] and some showing of actual prejudice resulting from the alleged constitutional violation.'" *Meeks v. Bergen,* 749 F.2d at 325, quoting *Wainwright v. Sykes,* 433 U.S. at 84, 97 S.Ct. at 2505.

 *Wainwright v. Sykes,* "does not bar federal habeas corpus relief merely upon a showing that an adequate procedural ground was available to support a conviction; rather, *Sykes* mandates that it must be demonstrated that the state court had *relied* upon the procedural default." *Meeks v. Bergen,* 749 F.2d at 325 (emphasis in original). "Where a state appellate court did not rely on the procedural default, but reached the merits of a claim, the *Sykes* bar is inapplicable," *Id.* at 325. *See also.*

 It is well settled·that if the state courts reach the merits of a claim that could have been dealt with by means of a procedural bar, the federal courts will also address the claim on the merits. *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available). In this case, however, the court is faced with a situation where the state appellate court did not reach the merits on a claim, but neither did it rely on a procedural bar to avoid reaching the merits. The court simply failed to address this particular claim.

The respondent is correct in stating as a proposition of law, that the Indiana Court of Appeals could have relied on a procedural bar to deal with the claims raised in this portion of Mr. Faust's habeas petition. That is essentially how the appellate court handled what it perceived as a challenge to the jurisdiction of the special judge. It is likely that had it addressed the issue of whether the way in which the trial court dealt with his motions to suppress constituted fundamental error, implicating the Fourteenth Amendment's due process clause, the Indiana Court of Appeals would have dealt with it in the same manner. But this court cannot say with certainty that it would have done so. Accordingly, giving Mr. Faust the benefit of the doubt, the court will not treat the claims presented in grounds three and four of the petition as procedurally defaulted.

■ The court turns next to the respondent's argument that although the petitioner characterizes this as a Constitutional claim, it is actually a state law claim that is not cognizable in federal habeas corpus proceedings. Pursuant to § 2254(a), in its review of a habeas petitioner's claims, this court is limited to deciding whether his conviction violated the "Constitution, laws, or treaties of the United States." *See also Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Del Vecchio v. Illinois Department of Corrections*, 31 F.3d 1363, 1370 (7th Cir.1994) (*en banc*). Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. at 67, 112 S.Ct. at 480; *Lindh v. Murphy*, 96 F.3d at 875; *Del Vecchio v. Illinois Department of Corrections*, 31 F.3d at 1385.

The petitioner recognizes the problem he faces in this regard, and concedes in his brief and memorandum in support of his petition that "admittedly, this may be construed as a state law issue claim." Mr. Faust attempts to deal with this problem by arguing that a state court's evidentiary rulings present cognizable habeas claims, "if they run afoul of a specific constitution-

al right or render the petitioner's trial fundamentally unfair (in which case sustaining the conviction would violate Petitioner's Fourteenth Amendment right to due process)." *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir.1994), *cert. denied*, 513 U.S. 1163, 115 S.Ct. 1128, 130 L.Ed.2d 1091 (1995).

■ Although Mr. Faust characterizes the failure of the trial court to adopt the master commissioner's denial of his motions to suppress before trial as a federal due process claim, it is clear, as the respondent argues, that this claim is strongly rooted in state law guarantees. Any rights Mr. Faust might have had concerning whether or not his trial should have commenced before the trial judge specifically adopted or approved the master commissioner's denial of his pre-trial motions to suppress arise under state law. The trial court's failure to formally deal with the master commissioner's ruling on the suppression motions before the trial started does not run directly afoul of any specific Constitutional right nor, in the circumstances of this case, did the procedure used by the trial court render his trial fundamentally unfair.

A habeas petitioner who filed a motion to suppress that was never ruled on by the state trial court might well argue a due process claim based on fundamental unfairness, but that is not the case here. Mr. Faust concedes that the master commissioner decided against Mr. Faust on the motions to suppress, after conducting hearings on these motions, and concluded that his statement was admissible. The record further reflects that when Mr. Faust objected to the admission of the statement at trial, the trial judge overruled his objections and held that the statement was admissible. Because the trial judge addressed the admissibility of the statement at the trial itself, the pretrial procedure used to deal with the admissibility of the statement did not violate Mr. Faust's federally protected right to a fair trial or

render his conviction Constitutionally invalid.

## VII.

For the foregoing reasons, the court:

1) **GRANTS** motion to alter or amend judgment [docket # 57] to the extent that it **VACATES** the entry of judgment in this case and its memorandum and order of December 23, 1998, and will reconsider the disposition of the petition, taking into account the petitioner's traverse, and **DENIES** his Motion to reargue judgment [docket # 58] as moot;

2), **DENIES** the petitioner's motion for judgment on the pleadings [docket # 17], his renewed demand for judgment on the pleadings [docket # 48], his motion for default judgment [docket # 19], his motion to renew his motion for entry of default judgment with particularity [docket # 47], his motion to strike the respondent's "response" to his summary judgment motion [docket # 20], his motion to modify and/or amend the court's order of September 9, 1998 [docket # 21], his motion to strike the respondent's return to the order to show cause from the record [docket # 45], and his motion to strike specific arguments from the respondent's order to show cause [docket # 49];

3) **GRANTS** the petitioner's motion to strike the respondent's replies to the court's order of January 12, 1999, [docket # 68] to the extent that it **DIRECTS** the clerk to strike the respondent's response to the petitioner's motion to reargue the judgment [docket # 63], his reply to the motion to alter or amend judgment [docket # 64], and his reply to the petitioner's request that Rule 11 sanctions be imposed on counsel for the respondent [docket # 66] from the record in this case;

4) **GRANTS** the petitioner's motion to take judicial notice [docket # 46], to the extent that it will treat his motion as a memorandum calling the court's attention to a portion of the state court record, **GRANTS** the petitioner's motion to take judicial notice of an affidavit attached to the petitioner's appellate brief in the Indiana Court of Appeals (exhibit G attached to the respondent's return to order to show cause) [docket # 53], to the extent that it will review the portion of the state court record cited in the memorandum, **DENIES** the petitioner's motion to expand the record to add the deposition of Indianapolis Police Officer George Leon Benjamin to the record [docket # 54], and **GRANTS** the petitioner's motion to expand the record to include his verified petition for transfer filed with the Indiana Supreme Court on its decision of February 6, 1998, his memorandum of law in support of the verified motion for transfer, and the notification that the Indiana Supreme Court denied transfer [docket # 56];

(5) **DENIES** the petitioner's motion for sanctions based on the Rules governing § 2254 cases [docket # 16], and his request that Rule 11 Sanctions be imposed on the respondent's counsel [docket # 59];

(6) **DENIES** the petitioner's motion for an evidentiary hearing [docket # 26], his motion for oral argument [docket # 27], his motion for a three-judge panel to hear oral argument [docket # 28], and his renewed motion for an oral argument [docket # 52]; and

(7) **DENIES** the petitioner's motion for summary judgment [docket # 6], and **DENIES** the petition for writ of habeas corpus.

**IT IS SO ORDERED.**